## UNITED STATES DISTRICT COURT FOR THE
## WESTERN DISTRICT OF LOUISIANA
## ALEXANDRIA DIVISION

**LA'ASIA BALL, ET AL**              **CIVIL DOCKET NO. 1:19-CV-01283**

**VERSUS**                           **JUDGE DAVID C. JOSEPH**

**PAT BOOK, ET AL**                  **MAGISTRATE JUDGE JOSEPH H.L. PEREZ-MONTES**

### MEMORANDUM RULING

Before the Court is a MOTION FOR SUMMARY JUDGMENT (the "Motion") filed by Defendants, Pat Book and LaSalle Management Co. (collectively, "Defendants"). [Doc. 18]. For the following reasons, the Defendant's Motion is GRANTED.

### PROCEDURAL HISTORY

On October 2, 2019, La'Asia Ball, Ja'Tavia Graham, and Laura Jones, individually and on behalf of her minor son, Joplin Graham Jr., ("Plaintiffs") filed suit, individually and on behalf of Joplin Graham, against Pat Book ("Book"), the Catahoula Correctional Center ("CCC"), and LaSalle Management Company, LLC ("LaSalle"). [Doc. 1]. Plaintiffs' claims arise out of the death of Joplin Graham ("Graham") during his incarceration at Catahoula Correctional Center. [Doc. 1]. Plaintiffs seek damages for the deprivation of Graham's constitutional rights in violation of the Civil Rights Act of 1871, 42 U.S.C. § 1983 ("§ 1983"). [Doc. 1 ¶¶ 24-26]. Invoking this Court's supplemental jurisdiction pursuant to 28 U.S.C. § 1367, Plaintiffs also bring state law survival claims for Defendants' allegedly tortious conduct in violation of Louisiana Civil Code Articles 2315, 2322, and 2317.1 and for wrongful death under Louisiana Civil Code Article 2315.2 for the damages Plaintiffs

1

allege they have personally suffered as a result of Graham's death.  [Doc. 1 ¶¶ 27-32]. Like their federal claims, Plaintiffs' state law claims stem from allegations that Defendants failed to provide Graham with proper medical care resulting in his death. [Doc. 1].

On November 22, 2021, Defendants filed this MOTION FOR SUMMARY JUDGMENT, under seal, seeking to dismiss all of Plaintiffs' claims.  [Doc. 18].  After being granted an extension of time to file a response, Plaintiffs filed an Opposition to the Motion on January 3, 2022.  [Docs. 22, 23].  The Defendants then filed a Reply on January 10, 2022.  [Doc. 26].  The Motion is now ripe for ruling.

## FACTUAL BACKGROUND

Joplin Graham was incarcerated at the CCC from September 28, 2018, to October 23, 2018.  [Doc. 1 ¶ 9].  Prior to his confinement at CCC, Graham was diagnosed with asthma, a condition that was recorded in his prison medical record upon admission.  [Doc. 1 ¶ 11].  Plaintiffs allege that on or about October 19, 2018, Graham suffered an onset of asthma for which he needed, but did not receive, sufficient medical attention.  [Doc. 1 ¶ 13-14].  Plaintiffs further allege that on October 22, 2018, Graham called a friend who was a nurse and requested that she plead with jail authorities to provide him the medical care that he urgently needed. [Doc. 1 ¶ 14].  Plaintiffs claim that this friend then called authorities at the CCC and demanded that Graham be given medical treatment immediately. [*Id*.].  On October 23, 2018, the Warden of CCC notified Laura Jones, Graham's emergency contact, that he had passed away at the hospital.  [Doc. 1 ¶ 15].  Plaintiffs claim that Defendants, including Pat Book as Warden of CCC and LaSalle Management as owner of CCC,

2

failed to adopt adequate staffing policies to ensure the safety of prisoners, including Graham, and were otherwise deliberately indifferent to Graham's medical needs, violating his constitutional rights and resulting in his death.  [Doc. 1 ¶¶ 7, 9, 20-22].

## LAW AND ANALYSIS

### I.     Summary Judgment Standard

A court should grant a motion for summary judgment when the pleadings, including the opposing party's affidavits, "show that there is no dispute as to any material fact and that the movant is entitled to judgment as a matter of law."  Fed. R. Civ. Pro. 56; *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 323-24 (1986).  A genuine dispute of material fact exists "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party."  *Hefren v. McDermott, Inc.*, 820 F.3d 767, 771 (5th Cir. 2016) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)).  A fact is "material" if proof of its existence or nonexistence would affect the outcome of the lawsuit under applicable law.  *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986).

The movant bears the burden of demonstrating the absence of a genuine dispute of material fact but need not negate every element of the nonmovant's claim. *Hongo v. Goodwin*, 781 F. App'x 357, 359 (5th Cir. 2019) (citing *Duffie v. United States*, 600 F. 3d 362, 371 (5th Cir. 2010)).  If the movant meets this burden, the burden then shifts to the nonmovant who is required to "identify specific evidence in the record and articulate the manner in which that evidence supports that party's claim."  *Johnson v. Deep E. Texas Reg'l Narcotics Trafficking Task Force*, 379 F.3d 293, 301 (5th Cir. 2004).  However, summary judgment cannot be defeated through

"[c]onclusional allegations and denials, speculation, improbable inferences, unsubstantiated assertions, and legalistic argumentation." *Acker v. Gen. Motors, L.L.C.*, 853 F.3d 784, 788 (5th Cir. 2017) (quoting *Oliver v. Scott*, 276 F.3d 736, 744 (5th Cir. 2002)).

In applying this standard, the Court should construe "all facts and inferences in favor of the nonmoving party." *Deshotel v. Wal-Mart Louisiana, L.L.C.*, 850 F.3d 742, 745 (5th Cir. 2017); *see Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986) ("The evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in his favor."). The motion for summary judgment should be granted if the non-moving party cannot produce sufficient competent evidence to support an essential element of its claim. *Condrey v. Suntrust Bank of Ga.*, 431 F.3d 191, 197 (5th Cir. 2005).

## II.    Standing of Plaintiffs

As an initial matter, the Defendants contend that all Plaintiffs' claims must be dismissed because the Plaintiffs lack proper standing to bring the claims asserted. [Doc. 19 p. 11]. Since 42 U.S.C. § 1983 does address the issue of standing to bring civil rights actions on behalf of the deceased, federal courts look to state law to determine who has standing to bring such a suit. *See* 42 U.S.C. § 1988; *Robertson v. Wegmann*, 436 U.S. 584, 590-92 (1978). Applying Louisiana law, the Court looks to the Civil Code to determine the proper standing of each of the Plaintiffs in this § 1983 action. *See Roberts v. City of Shreveport*, 221 F. App'x. 314, 315 (5th Cir. 2007); *Aguillard v. McGowen*, 207 F.3d 226, 231 (5th Cir. 2000); *Pluet v. Frasier*, 355 F.3d 381, 383-84 (5th Cir. 2004); *Rhyne v. Henderson County*, 973 F.2d 386, 391 (5th Cir.

1992).   Under the facts presented, wrongful death and survival actions may be asserted by Graham's children.[1]  *See* La. Civ. Code Arts. 2315, 2315.1, 2315.2.

Here, the parties dispute whether Plaintiffs are properly filiated as Graham's children.   It is therefore necessary for the Court to consider if paternity can be established under Louisiana law.   Plaintiffs allege that the evidence they have provided, birth certificates and affidavits, are sufficient to meet their burden of establishing filiation to Graham.   [Doc. 23 p. 4].   On the other hand, although Defendants acknowledge that the birth certificate of Plaintiff, Ja'Tavia Graham, establishes a genuine issue of fact as to whether she is filiated to Graham, they maintain that La'Asia Ball cannot establish Graham's paternity by clear and convincing evidence and that she should therefore be dismissed as a Plaintiff.   [Doc. 26 p. 1-2].

Louisiana Civil Code Article 197 requires that a child seeking to establish filiation after the death of his or her alleged father must prove paternity by clear and convincing evidence.[2]  Such evidence may include informal acknowledgement.[3]  An informal acknowledgement, "must be continuous, habitual, unequivocal, and leave

---

[1]      Plaintiffs concede that Laura Jones is not a proper Plaintiff and agree that the claim brought in her individual capacity should be dismissed.

[2]      Although the Plaintiffs have not expressly instituted an action to prove paternity, nor have they asserted filiation in their Complaint, an action for filiation nonetheless accompanies a wrongful death action brought by someone who is not presumed to be the child of the deceased.  *See Nobre on Behalf of K.M.C. v. Louisiana Department of Public Safety*, 935 F.3d 437, 443 (5th Cir. 2019).

[3]      Neither party has asserted that a formal acknowledgement, *i.e.*, where a man acknowledges a child by an authentic act to create a presumption of paternity, has occurred in this case.  La. Civ. Code Art. 196.

little doubt that the alleged father considered himself to be the father of the child."
*Pierre ex rel. Pierre v. Hardy*, 2014 WL 4545945 at * 4 (E.D. La. Sept. 12, 2014)
(quoting *Jordan v. Taylor*, 568 So.2d 1097, 1098 (La. App. 4 Cir. 1990)).  Examples of
an informal acknowledgement of paternity include actions by the alleged father such
as:  (i) writings, (ii) living with the mother of the child at the time of conception, (iii)
giving the child his surname, (iv) consistently acknowledging to others that the child
is his own, and (v) naming the child in his succession. *Henderson v. Turner*, 2013 WL
321572 at * 3 (M.D. La. Jan. 28, 2013) (citing *Jenkins v. Mangano Corp.*, 774 So. 2d
101, 103 (La. 2000)).

At the summary judgment stage, it is not appropriate for this Court to
determine if the Plaintiffs have established their filiation to Graham by clear and
convincing evidence, but rather only that there is a genuine dispute of material fact.
*See Henderson*, 2013 WL 321572 at * 4 (finding that when the Defendant was the
party to file a motion for summary judgment, the plaintiffs did not need to meet the
burden of showing filiation by clear and convincing evidence, but rather only needed
to show that there was a genuine issue for trial).  Applying the correct standard, the
Court determines that the evidence provided by Plaintiffs – birth certificates for
Joplin Graham, Jr. and Ja'Tavia Graham with Graham's name listed as the father
and affidavits from Graham's mother and sister attesting that Graham held himself
out to his friends and family as La'Asia, Ja'Tavia, and Joplin's father – is enough to
establish a genuine dispute of material fact as to whether Plaintiffs can meet their
burden of proving Graham's paternity by clear and convincing evidence.  [Docs. 23-2,

23-3, 23-4, and 23-5].  Accordingly, the Court denies Defendants' request to dismiss Graham's children as improper plaintiffs.

### III.    42 U.S.C. § 1983 Claims

Plaintiffs bring their § 1983 claims against LaSalle Management Company, LLC, a private prison company that held prisoners at the CCC pursuant to a contract with the State of Louisiana, the CCC, and Book, a former "warden" of the private facility.  "To state a claim under § 1983, a plaintiff must allege the violation of a right secured by the Constitution and laws of the United States and must show that the alleged deprivation was committed by a person acting under color of state law." W*est v. Atkins*, 487 U.S. 42, 48 (1988).  A private entity or individual can be found liable for a § 1983 violation when "acting under color of state law," even though they are not an officer of the state.  *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 152 (1970).  A private entity or individual is acting under color of state law when performing "a function which is traditionally the exclusive province of the state." *Wong v. Stripling*, 881 F.2d 200, 202 (5th Cir. 1989).  The Fifth Circuit has explicitly found that a private entity operating a prison, and its employees, are performing a "fundamentally governmental function," and can therefore be found in violation of § 1983. *Rosborough v. Management Training Corp.*, 350 F.3d 459, 461 (5th Cir. 2003).  Thus, although LaSalle Management Company is a private entity and Pat Book was employed by that private entity, a § 1983 violation claim can be brought against them because, by operating CCC, they were performing a function which is fundamentally governmental in nature.

### a. Party's Arguments

Plaintiffs argue that LaSalle Management Company's policies and practices were the ultimate source of Graham's inadequate medical treatment and death. [Doc. 1 ¶ 19]. Plaintiffs specifically claim that in operating CCC, Defendants adopted a practice of maintaining an understaffed facility, insufficiently training staff to evaluate for medical needs, failing to satisfactorily monitor inmates, and depriving Graham of his civil rights by failing to treat his medical needs and allowing untrained, non-medical staff to address those needs. [Doc. 1 ¶ 20].

Plaintiffs also claim that Defendants acted with deliberate indifference in violation of § 1983 by denying Graham's requests for medical treatment. [Doc. 1 ¶ 16-17]. Additionally, Plaintiffs assert that Defendants acted with deliberate indifference by failing to check Graham's blood oxygen level "for nine days." [Doc. 23 p. 6]. Plaintiffs attach Graham's medical records and indicate that he was treated on October 15, 2018, and his blood oxygen level registered at 98%. [*Id*.]. Plaintiffs go on to note that Graham was treated again on October 22, 2018, but that his blood oxygen level was not checked until October 23, 2018, the date of Graham's death, when it registered at 65% and then at 62%. [*Id*.; Doc. 23-6].

The additional evidence Plaintiffs produce in support of their claim of deliberate indifference is an Affidavit signed by Laura Jones, Graham's girlfriend (the "Jones Affidavit"). [Doc. 23-7]. In the Affidavit, Jones attests that on October 9, 2018, she spoke to Graham who told her that he almost had an asthma attack, the nurse had not checked on him in approximately one hour, and that a guard had to break into a medicine cabinet to provide him with treatment. [Doc. 23-7 p. 1].

Additionally, Jones affirms that after Graham's death she spoke to a nurse who told her that Graham had not been feeling well on the day before his death.  [Doc. 23-7 p. 2].  Jones alleges that the nurse also told her that she had given him a breathing treatment, at which point he "slumped over."  [*Id*.].  Lastly, Jones attests that she spoke to a former cellmate of Graham who told her that on the night before Graham's death, he had to beat on the door to try and seek help because Graham was struggling to breathe, but that the guard had ignored the former cellmate and told him to sit down.  [*Id*.].

In response, Defendants argue that Plaintiffs have failed to put forth any evidence to support their claim that LaSalle implemented inadequate policies, staffing, training, or supervision at CCC, or acted with deliberate indifference in administering those policies.  [Doc. 19 p. 19-20].  Next, Defendants assert, and CCC Nurse Practitioner Elijah Boothe affirmed via Affidavit, that LaSalle implemented an adequate medical policy at CCC by providing medical care through trained health care personnel, that the facility was adequately staffed, and that Graham was provided frequent and proper medical treatment for his asthma.  [Doc. 19 p. 19-21; Doc. 19-4].  Defendants maintain that Plaintiffs cannot base their allegation of a constitutional violation on a singular event, and that a disagreement as to the type or degree of medical care provided does not amount to deliberate indifference.  [*Id*.; Doc. 26 p. 5].

Defendants also assert that a claim against Pat Book in his official capacity is identical to a claim made against LaSalle and is therefore duplicative.  [Doc. 19 p. 13-14].  Further, Defendants contend, and Book affirmed via Affidavit, that at the time

of Graham's death, he was employed by LaSalle as a consultant and was not the Warden.  [Doc. 19 p. 9; Doc. 19-3].  In this regard, Defendants assert that Pat Book had no authority to make or implement policies at CCC and otherwise had no interactions with Graham.  [Doc. 19 p. 9, 14].

Finally, Defendants maintain that Plaintiffs cannot put forth sufficient evidence to show that Pat Book violated § 1983 in his individual capacity for failing to train subordinates or to implement a satisfactory policy.   [Doc. 19 p. 15].  Defendants reiterate that Book had no authority to affect any policies or treatment given at CCC.  [Doc. 19 p. 15-17].  Defendants also argue that Book cannot be found in violation of § 1983 in his individual capacity for failing to provide medical care because he never treated, or otherwise interacted with Graham.   [Doc. 19 p. 15].  Lastly, Defendants claim that some of the statements contained in the Affidavit submitted by Laura Jones are hearsay and therefore not proper summary judgment evidence.  [Doc. 26 p. 2-3].

### b.  Laura Jones' Affidavit

First, the Court must address whether the Jones Affidavit is valid summary judgment evidence.  Rule 56 of the Federal Rules of Civil Procedure ("Rule 56") articulates what the Court can consider as proper summary judgment evidence.  Rule 56 provides that an affidavit used to support or oppose a motion for summary judgment is appropriate when it is "made on personal knowledge, set[s] out facts that would be admissible in evidence, and show[s] that the affiant is competent to testify on the matters stated."  The Fifth Circuit has interpreted this rule to mean that any inadmissible hearsay statement contained in an affidavit is not proper summary

judgment evidence. *Martin v. John W. Stone Oil Distributor, Inc*., 819 F.2d 547, 549 (5th Cir. 1987). Here, the Jones Affidavit contains hearsay in the form of her recounting what she was told by Graham, Graham's nurse, and Graham's former cellmate. [Doc. 23-7]. The statements are out-of-court statements that are offered for the truths of the matters asserted therein and are, therefore, indisputably hearsay evidence. *See* Fed. R. Evid. 801.

Plaintiffs, however, argue that exceptions to the rule against hearsay apply to these out-of-court statements. Paragraphs 2 and 3 of the Jones Affidavit contain Leslie Jones' recounting of a telephone conversation she had with Graham. [Doc. 23-7]. In this conversion Graham told her that "he almost had an asthma attack," that "he needed to go to the hospital," and that "he did not feel well." [Doc. 23-7]. Although these statements are clearly hearsay, the exception provided in Federal Rule of Evidence 803(3) applies. Federal Rule of Evidence 803(3) explains that "a statement of a declarant's then-existing state of mind…such as mental feeling, pain, or bodily health" is an exception to the rule against hearsay. Here, Graham made statements to Leslie Jones describing the pain he was experiencing and his then self-perceived state of health. These statements are therefore admissible summary judgment evidence.

The other statements that Leslie Jones claims Graham told her, including that "the nurse had not checked on him for approximately one hour," and that "the guard had to break into the medicine cabinet to treat him" are not statements made by Graham to express his then existing state of mind or physical condition and therefore do not fall within the hearsay exception provided in Federal Rule of Evidence 803(3).

11

*See Bedingfield ex rel. Bedingfield v. Deen,* 487 F. App'x. 219, 227 (5th Cir. 2012) (holding that the hearsay exception provided in Federal Rule of Evidence 803(3) does not extend to a declarant's statements as to why he was in a particular state of mind). Additionally, contrary to Plaintiffs' assertion, these statements are not exceptions to the rule against hearsay under Federal Rule of Evidence 804(b)(2).  [Doc. 31 p. 3-4]. Federal Rule of Evidence 804(b)(2) provides a hearsay exception for a statement that was made by a now unavailable declarant, in which he describes the cause or circumstances of what he believed to be his imminent death.  Although Graham eventually died, these statements were made days before his death, and were not made while Graham believed his death to be imminent.  *See Bedingfield,* 487 F. App'x. 228 (quoting *Shepard v. U.S.*, 290 U.S. 96, 99-100 (1933)) (holding that for a hearsay statement to be admissible under the exception provided in Federal Rule of Evidence 804(b)(2), "the declarant must have spoken without hope of recovery and in the shadow of impending death").  These additional statements in Paragraph 2 of the Jones Affidavit are therefore hearsay and are not admissible summary judgment evidence.

Next, Plaintiffs argue that Paragraph 6 of the Jones Affidavit falls under the exception in Federal Rule of Evidence 803(4), which excludes from the rule against hearsay, a statement made by the declarant for the purpose of relaying medical history or information that is necessary to receive a medical diagnosis or treatment. [Doc. 31 p. 4].  In the Jones Affidavit, Leslie Jones repeats what she claims a nurse told her, including that on the date of Graham's death he was "feeling bad" and that the nurse had given Graham a "breathing treatment and while giving him the

12

treatment he 'slumped over'."   [Doc. 23-7].   These statements do not describe the nurse relaying her own medical history or other information for the purpose of seeking her own medical diagnosis or treatment and is therefore not an exception to the rule against hearsay.  *See Francois v. General Health System*, 459 F. Supp. 3d 710, 723 (M.D. La. May 11, 2020) (holding that the exception in Federal Rule of Evidence 803(4) does not extend to statements made by someone other than the person seeking the medical treatment).   Additionally, this statement does not fall under the exception in Federal Rule of Evidence 803(3) because the nurse was not describing her state of mind during her treatment of Graham, but rather was communicating to Leslie Jones a "statement of memory or belief to prove the fact remembered or believed" – which is specifically excluded from the exception.  *See* Fed. R. Evid. 803(3).  Therefore, the statements offered in Paragraph 6 of the Affidavit are hearsay and inadmissible summary judgment evidence.

Lastly, Plaintiffs argue that Paragraph 8 in the Jones Affidavit falls under Federal Rule of Evidence 803(3) as an exception to the hearsay rule because it explains the declarant's then-existing state of mind.   [Doc. 31 p. 5].   Paragraph 8 contains a report of a phone conversation Leslie Jones had with Graham's former cellmate, Branon Chin, during which he told her that "the night before [Graham] passed away...he had to beat on the door because [Graham] was struggling to breathe," and that he "tried to get help from a guard, but the guard ignored him stating to 'sit his ass down'."   [Doc. 23-7].   These statements do not fall under any exceptions to the rule against hearsay.  First, Brandon Chin's recounting to Jones that he was beating on the door seeking help for Graham was not offered to show,

and does not show, his state of mind at the time of this incident and is not an exception under Federal Rule of Evidence 803(3).  This information was provided in the Affidavit to "prove the fact remembered or believed" – specifically that an attempt to seek medical help for Graham went ignored.  *See* Fed. R. Evid. 803(3).  Additionally, this statement does not fall under the exception to the rule against hearsay provided in Federal Rule of Evidence 803(1), which creates an exception for a "statement describing or explaining an event or condition, made while or immediately after the declarant perceived it."  Here, Brandon Chin was explaining an event to Leslie Jones two years after the event occurred, not simultaneous to or immediately after the event.  Therefore, the statements offered in Paragraph 8 of the Affidavit are hearsay and inadmissible as summary judgment evidence.

The information contained in the Jones Affidavit, other than Graham's statements of how he was feeling, are inadmissible summary judgment evidence considering Laura Jones has no personal knowledge of this information.  Because Laura Jones would not be able to testify to this secondhand information were this matter to proceed to trial, the proffered hearsay statements are not admissible evidence.

### c.  Claims against LaSalle Management Company

The Supreme Court has held that a municipality may be liable under § 1983 when following one of its own customs or policies leads to a constitutional violation.  *Monell v. Dept. of Social Services of N.Y.*, 436 U.S., 658, 694 (1986).  As previously mentioned, LaSalle Management Company is acting under color of law within the definition of  § 1983.  [Section III, *supra*.].  Therefore, LaSalle Management Company

is treated as a state actor when evaluating a violation of § 1983 arising under the theory of municipal liability.  *See Mixon v. Pohlmann*, 2021 WL 6072501 at *16 (E.D. La. Dec. 23, 2021); *Carter v. Gautreaux*, 2021 WL 2785332 at *2 (M.D. La. July 1, 2021); *Tolbert v. Gusman*, 2020 WL 1892590 at *5-6 (E.D. La. April 16, 2020); *Coleman v. LaSalle Correctional Center*, 2008 WL 2465989 at *4-5 (W.D. La. May 29, 2008); *Phillips v. Corrections Corp. of America*, 2006 WL 1308142 at *3 (W.D. La. May 10, 2006).

To establish municipal liability, a plaintiff must show: "(1) an official policy (or custom), of which (2) a policy maker can be charged with actual or constructive knowledge, and (3) a constitutional violation whose 'moving force' is that policy or custom."  *Valle v. City of Houston*, 613 F. 3d 536, 541-42 (5th Cir. 2010) (quoting *Pineda v. City of Houston*, 291 F. 3d 325, 328 (5th Cir. 2002)).  Then, to demonstrate that the policy was the "moving force" behind the deprivation of rights, the plaintiff must put forth specific facts illustrating that the execution and implementation of the policy or custom was the "cause in fact" of what led to the injury suffered.  *Spiller v. City of Texas City, Police Dept.*, 130 F.3d 162, 167 (5th Cir. 1997) (citing *Meadowbriar Home for Children, Inc., v. Gunn*, 81 F.3d 521, 533 (5th Cir. 1996) and *Fraire v. Arlington*, 957 F.2d 1268, 1277 (5th Cir 1992)).

A policy that is the moving force behind the deprivation of rights can take the form of: "an (1) express policy of violating the Constitution, (2) a widespread practice or custom − even if that custom has not received formal approval by an official decision-making body − or (3) a decision by an individual with express policy-making authority."  *Cardenas v. Lee County, Tex.*, 569 F. App'x. 252, 255 (5th Cir. 2014) (citing

*Monell*, 436 U.S., at 690-91 (1986)).  Additionally, a plaintiff can show that a custom was the moving force behind the specific violation of rights by showing that the custom was "'persistent,' 'widespread,' 'common,' and 'well settled.'"  *Webster v. City of Houston*, 735 F.2d 838, 842 (5th Cir. 1984).  Failing to train employees can be considered a policy or custom that was the moving force behind the violation when that failure reflects a deliberate indifference, meaning that the failure to train shows a deliberate or conscious choice on the part of the municipality.  *City of Canton, Ohio v. Harris*, 489 U.S. 378, 389 (1989).

Plaintiffs allege that a policy or custom of failing to adequately staff CCC and failing to adequately train CCC staff to treat the medical needs of inmates was the moving force in Graham's death.  [Doc. 1 ¶ 20].  Plaintiffs, however, do not provide any specific examples of an inadequate policy or widespread custom.  The general assertion that CCC was operating under a deficient policy or custom is not sufficient summary judgment evidence.  *See Grimes v. Texas Dept. of Mental Health and Mental Retardation*, 102 F.3d 137, 140 (5th Cir. 1996) (holding unsubstantiated assertions, conclusory allegations, and speculation are insufficient to satisfy the plaintiff's burden on summary judgment).

### d.  Claims Against Pat Book

The parties dispute whether Pat Book was the Warden of CCC at the time of Graham's death.  Viewing all facts in the light most favorable to the Plaintiffs, the Court will assume – for purposes of analyzing the allegations that Pat Book violated § 1983 – that he was the Warden at CCC at the time of Graham's death.

### i.  Claims Against Pat Book in his Official Capacity

The Supreme Court has held that a § 1983 claim against an officer in his or her official capacity is just another avenue to sue the entity to which that officer is an agent.  *Kentucky v. Graham*, 473 U.S. 159, 165-66 (1985).  Such a § 1983 claim is therefore treated as though it had been brought against the entity itself.  *Id*.  "When … the government entity itself is a defendant in the litigation, claims against specific individuals in their official capacities are redundant, and for that reason, courts in this circuit have found it is appropriate to dismiss them."  *Broussard v. Lafayette City-Parish Consolidated Government*, 45 F. Supp. 3d 553, 571 (W.D. La. 2014) (first citing *Castro Romero v. Becken*, 256 F.3d 349, 355 (5th Cir. 2001); then citing *Flores v. Cameron County, Tex.*, 92 F.3d 258, 261 (5th Cir. 1996)).  The claims against Pat Book in his official capacity are duplicative of the claims brought against LaSalle Management Company and are therefore properly dismissed.

### ii.  Claims Against Pat Book in his Individual Capacity – Failure to Supervise or Train

To prove a violation of § 1983 due to a "failure to supervise or train" the plaintiff must show that: "(1) the supervisor either failed to supervise or train the subordinate official; (2) a causal link exists between the failure to train or supervise and the violation of the plaintiff's rights; and (3) the failure to train or supervise amounts to deliberate indifference."  *Goodman v. Harris County*, 571 F. 3d 388, 395 (5th Cir. 2009) (quoting *Smith v. Brenoettsy*, 158 F.3d 908, 911-12 (5th Cir. 1998)).  To show deliberate indifference in failing to supervise or train, the plaintiff must provide evidence of "a pattern of violations and that the inadequacy of the training is obvious

and obviously likely to result in a constitutional violation." *Id.* (quoting *Cousins v. Small*, 325 F.3d 627, 637 (5th Cir. 2003)).

Plaintiffs have not provided any evidence of the type of training policies implemented at the CCC during the relevant timeframe, nor do they put forth any evidence that Pat Book, or any other supervisor at the CCC, failed to properly train or supervise his or her subordinates. Plaintiffs have only supplied the conclusory allegation that Defendants failed to "adequately train, supervise, monitor, and discipline staff," in the ways necessary to properly identify and treat medical needs of inmates. [Doc. 1 ¶ 20]. Such an unsupported legal conclusion is not sufficient summary judgment evidence to establish any element of Plaintiffs' claim. *See Acker* 853 F.3d 788 (5th Cir. 2017).

### iii. Claims Against Pat Book in His Individual Capacity – Failure to Provide Medical Care

The United States Supreme Court has held that "deliberate indifference" to a prisoner's illness or injury gives rise to a cause of action under § 1983. *Estelle v. Gamble*, 429 U.S. 97, 104 (1976). The Supreme Court later explained that "deliberate indifference" occurs when the official has knowledge of a substantial risk of serious harm and fails to reasonably act on it. *Farmer v. Brennan*, 511 U.S. 825, 838-44 (1994). To prove that a prison official acted with deliberate indifference towards the medical needs of a prisoner, that prisoner must produce evidence showing the official, "refused to treat him, ignored his complaints, intentionally treated him incorrectly, or engaged in any similar conduct that would clearly evince a wanton disregard for any serious medical needs." *Domino v. Texas Dept. of Criminal Justice*, 239 F.3d 752,

756 (5th Cir. 2001) (quoting *Johnson v. Treen*, 759 F.2d 1236, 1238 (5th Cir. 1985)). Further, medical malpractice, negligence, unsuccessful treatment, the decision whether to provide additional treatment, and disagreement with the medical treatment provided are not enough to show deliberate indifference. *See Gobert v. Caldwell*, 463 F.3d 339, 345 (5th Cir. 2006); *Domino*, 239 F.3d 752, 756.

The evidence provided shows that Defendants had knowledge of a "substantial risk of serious harm," considering medical personnel at CCC knew that Graham was diagnosed with and actively suffered from asthma. [Docs. 19-2; 23-6]. Plaintiffs, however, cannot prove that officials at CCC, namely Pat Book, acted with deliberate indifference when treating Graham's asthma. Graham's statements that he was not feeling well provided in the Jones Affidavit and the proffered summary judgment evidence that his blood oxygen level was not monitored for nine days are the only admissible summary judgment evidence that may have bearing on a claim of deliberate indifference. [Docs. 23 p. 6; 23-7]. Plaintiffs' belief that Graham should have been treated differently, sooner, or more often, is not sufficient to show deliberate indifference. *Domino*, 239 F.3d at 756 (5th Cir. 2001). Even if the Court accepts Plaintiffs' contention that medical personnel should have, but did not, check Graham's blood oxygen level often enough, this, at most, would be considered medical malpractice or negligence. An allegation of medical malpractice or negligence is not sufficient to amount to a deliberate indifference to Graham's medical needs. *See Gobert*, 463 F.3d at 346 (5th Cir. 2006). Plaintiffs, therefore, cannot meet their

burden to show that Defendants blatantly refused to treat Graham's asthma or intentionally treated him incorrectly in violation of § 1983.[4]

## IV.   Remaining State Law Claims

Having determined that the federal claims asserted by Plaintiffs are properly dismissed, the Court must next decide whether exercising supplemental jurisdiction over the remaining state law claims is proper.

The statutory factors set forth by 28 U.S.C. § 1367(c) and the common law principals of judicial economy, convenience, fairness, and comity guide district courts when determining whether to exercise jurisdiction over pendant state law claims. *Enochs v. Lampasas Cty.*, 641 F.3d 155, 158-59 (5th Cir. 2011); *Carnegie-Mellon Univ.*, 484 U.S. 343, 350 (1988) (setting forth the common law factors).  The statutory factors are: (1) whether the state law claims raise novel or complex issues of state law; (2) whether the state law claims substantially predominate over the federal claims; (3) whether the federal claims have been dismissed; and (4) whether there are exceptional circumstances or other compelling reasons for declining jurisdiction. *Enochs*, 641 F.3d at 159.  The general rule is to decline to exercise jurisdiction when

---

[4]     The Court notes that its ruling dismissing Plaintiffs' § 1983 claims does not mean that additional discovery would not have uncovered sufficient evidence to support these claims. Rather, the Court confines its analysis to the proper summary judgment evidence put forth by the Plaintiffs in their opposition to the Motion.  In this regard, the record does not reflect that any discovery was conducted regarding the type of training or supervision that Defendants implemented at the CCC, despite the parties having access to names of multiple individuals who worked at the facility or were in supervisory roles at the time of Graham's death.  [Docs. 23-7; 19-1 p. 5-11; 19-2 p. 2].  The record also does not contain any deposition testimony from Graham's cell mate, the nurse that Laura Jones spoke to on the phone, or Graham's friend that he spoke to on the phone prior to his death.

all federal claims are dismissed or otherwise eliminated from a case prior to trial. *Smith v Amedisys Inc.*, 298 F.3d 434, 446-47 (5th Cir. 2002).

The Court finds declining to exercise supplemental jurisdiction over Plaintiffs' state law claims is proper under the above-mentioned factors, especially considering all federal claims have been dismissed.  Additionally, because the Plaintiffs' state law claims must be decided using different standards of liability than those in a § 1983 action, were the Court to retain jurisdiction it would be incumbent upon the Court to adjudicate issues related to the proper application of Louisiana law that are more appropriately reviewed by a Louisiana court in the first instance.  *See Hicks v. Austin Indep. School Dist.*, 564 F. App'x 747, 749 (5th Cir. 2014); *Dixon v. Barr*, 2022 WL 141676 at *3 (W.D. La. Jan. 14, 2022); *Martin v. Staff/Employees USP Pollock*, 2021 WL 5631440 at *4 (W.D. La. Nov. 9, 2021); *Jones v. Goodwin*, 2021 WL 5912864 at *6 (W.D. La. Oct. 25, 2021).  Accordingly, the Court concludes that it is appropriate to decline to exercise supplemental jurisdiction over Plaintiffs' remaining claims.

## CONCLUSION

For the above-mentioned reasons,

IT IS HEREBY ORDERED that Defendant's MOTION FOR SUMMARY JUDGMENT [Doc. 18] is GRANTED as to Plaintiffs' claims under 42 U.S.C. § 1983 against Defendants, LaSalle Management Company and Pat Book, which are DISMISSED WITH PREJUDICE.

IT IS FURTHER ORDERED that Plaintiffs' remaining state law claims in the above-captioned matter are DISMISSED WITHOUT PREJUDICE.

IT IS FURTHER ORDERED that Defendants' MOTION IN LIMINE [Doc. 27] is GRANTED IN PART and DENIED IN PART as discussed herein.

THUS, DONE AND SIGNED in Chambers on this 18th day of February 2022.

DAVID C. JOSEPH
UNITED STATES DISTRICT JUDGE